**Pamela ESLINGER, et al., Appellees,**

v.

**F & B FRONTIER CONSTRUCTION CO., Appellant.**

Supreme Court of Tennessee.

July 6, 1981.

James F. Logan, Jr., Logan & Bates, Cleveland, for appellees.

George Lane Foster, Hall, Haynes, Lusk & Foster, Chattanooga, for appellant.

## OPINION

FONES, Justice.

Defendant, employer, appeals from a decree awarding death benefits under the workers' compensation act to the widow and minor child of its employee, who was killed when the company truck he was driving struck a utility pole.

The trial judge found that the fatal accident arose out of and in the course of the employment. Defendant says the issues on appeal are (1) that there is no material evidence to support the finding that employee was on a company errand when the accident occurred, and (2) that the fact that the employee was driving a company owned vehicle does not "necessitate" a finding that the accident arose out of and in the course of his employment. Defendant's contentions have no merit and we affirm the trial court decree.

Deceased Dewayne Eslinger was an employee of defendant corporation that was engaged in business as a utility construction firm. His father, John F. Eslinger, owned all the stock in the corporation and was its president. At the time of the accident, the company was performing a construction project for the City of Dayton that involved a revitalization of a two block area of the central business district. The project included new sidewalks, curbs, gutters, street surfaces, water lines, storm sewers, street lights, traffic signals, etc. The work was scheduled on what is known as the critical path method, and the Eslinger firm had worked nights as well as days in an effort to minimize disruption of the business of those establishments affected by the work in progress.

Dewayne Eslinger was the company superintendent in charge of the Dayton project. The company furnished him a three and one-quarter ton pickup and paid for the cost of its operation that included going to and from his home to the company's work locations. The company's main offices were located in Chattanooga and deceased lived in Cleveland.

The accident occurred at Georgetown Road and Highway Sixty about 1:00 a. m. on Friday morning, September 8, 1978. According to decedent's wife, he had been leaving home about 5:00 a. m. to get to work in Dayton by 6:00 a. m., and returning

home about 10:00 or 11:00 p. m. The week that he met his death he had worked all day Tuesday, throughout the night Tuesday night, and all day Wednesday. He went to his home in Cleveland Wednesday night and left about 5:00 a. m. Thursday and returned to Dayton. Deceased worked until about midnight Thursday night and was on a direct route to his home when the accident occurred. He was alone in the truck and the clear inference from the proof is that he must have fallen asleep, run off the road, and struck a utility pole.

On that Thursday evening a problem developed in connecting two water lines of different sizes at a street intersection in Dayton. According to defendant's witnesses, they needed a special dual purpose sleeve to accomplish the connection without leakage in a short time and the nearest source of such a sleeve was the U. S. Pipe and Foundry in Chattanooga, which would not be open until Friday morning at 8:00 a. m. In those circumstances, deceased and others used portable saws to cut the pipe so that the sleeve they had available would fit, and sometime around eleven or twelve p. m. the work was done and the water supply to the business firms, that had been cut off while that work was in progress, was turned back on.

The city manager of Dayton was called by the plaintiff and testified that deceased intended to get the special sleeve and "go by home" before returning Friday morning; that the waterline problem was not solved Thursday night, but was fixed Friday morning in the absence of Mr. John Eslinger and his other son, who understandably had left the job because of Dewayne's death.

Defendant vehemently insists that the city manager's testimony does not constitute material evidence supporting the finding of the trial judge that deceased was on a company errand or dual purpose mission at the time of the accident. We disagree.

■ Most of the evidence adduced in this case revolves around the issue of whether there was any necessity that deceased obtain the special sleeve before returning Friday morning. While we would be required to affirm the chancellor, if that was the only basis upon which the accident would be compensable, we regard it as a secondary issue. The primary reason the accident arose out of and in the course and scope of the employment was that the company provided him a business use vehicle that he was authorized and expected to use in going to and from work sites to his home. It is well settled law in this State that where transportation is furnished by an employer as an incident of the employment, an injury suffered by the employee while going to or returning from his work in the vehicle furnished arises out of and is within the course of the employment. *McClain v. Kingsport Improvement Corporation*, 147 Tenn. 130, 245 S.W. 837 (1922); *Oman v. Delius*, 10 Tenn.App. 467 (1929); *W. C. Sharp Drug Stores v. Hansard*, 176 Tenn. 595, 144 S.W.2d 777 (1940); and *Ward v. Ward*, 213 Tenn. 657, 378 S.W.2d 754 (1964).

The facts of this case are particularly compelling in support of that principle. Decedent's wife testified that he regularly filled out time cards at the kitchen table while she cleaned up after dinner. There was evidence that he drove other employees from their homes to the Dayton and other work sites and returned them home at the end of the work day, and he hauled tools and blueprints in the truck. Time records on the Dayton job and blueprints were found in the truck at the scene of the accident.

The judgment of the Chancery Court of Bradley County is affirmed and a mandate to that effect will be entered in this cause in the trial court. See Rule 43(a) and (b). Costs are adjudged against defendants.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.